[No. 15347.   Department Two.   August 15, 1919.]

UMPQUA VALLEY FRUIT UNION, *Respondent,* v. NORTH PACIFIC FRUIT DISTRIBUTORS, *Appellant.*[1]

APPEAL (389)—PLEADING (189, 211)—VARIANCE—PREJUDICIAL EFFECT.  In an action for the value of fruit shipped by defendant, a variance between an allegation that plaintiff turned over exclusive control of the fruit to defendant and proof that the plaintiff retained control and power of disposition, is not fatal, where defendant was apprised thereof at the beginning of the trial and did not claim surprise or ask a continuance.

CORPORATIONS (17)—EVIDENCE OF EXISTENCE.  The existence of a corporation may be shown by parol evidence.

APPEAL (449)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.  The exclusion of oral evidence as to the existence of a corporation, while erroneous, is not prejudicial where it was wholly immaterial.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered October 31, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages.  Affirmed.

[1]Reported in 183 Pac. 101.

*Hamblen & Gilbert,* for appellant.

*Chas. P. Lund* and *Dodds & Dodds,* for respondent.

BRIDGES, J.—The respondent sued for damages for the negligent handling by appellant of three carloads of Bartlett pears. The verdict of the jury was for the plaintiff, and the appeal is from the judgment entered thereon. The facts are substantially as follows: the appellant is a Washington corporation; those interested in it and controlling its affairs are as follows: The Wenatchee North Central Fruit Distributors, the Idaho-Oregon Fruit Growers' Association, the Montana Fruit Distributors, and the Western Oregon Fruit Distributors. The subsidiary corporations constituting the appellant were its active agents and exercised extensive powers. In 1917, the appellant, acting through its agent, the Western Oregon Fruit Distributors, solicited and obtained the promise of the business of the respondent for that year. There was an agreement between the parties to the effect that the appellant should first find purchasers in the east for the respondent's fruit, at certain fixed prices, which sale was to be confirmed by the respondent, and the cars of fruit were to be shipped in the name of appellant to the persons to whom sold, and it was to be the appellant's duty to take charge of the shipment and see to the delivery thereof and the collection of all moneys. The appellant maintained a fruit inspection bureau at Chicago, and one of the important features of the contract was that cars of fruit shipped east of Chicago should be carefully examined at that point. If, upon inspection, the fruit appeared to be ripe and would not stand further shipment, the appellant was to notify respondent, who would give further instructions with reference to its disposition. If, for any reason, the purchaser of the fruit refused to take the

same, appellant was required to acquaint respondent with this fact also, so that it could give such instructions as it saw fit. In August, 1917, under this general agreement, three car loads of respondent's Bartlett pears were sold; one car was sold to F. B. Crovo, at Washington, D. C., and was shipped thither, billed in the name of appellant; another car was sold to W. H. Harrison, at Washington, D. C., and was shipped and billed as the first car; the third car was sold to Wignall & Moore Company, at Chicago, and was shipped and billed in the same manner as the other two cars.

It appears that, when the first car reached Chicago, the fruit was inspected and found to be ripe and in no condition to stand the delay of shipment on to Washington. It was in such condition that it should have been disposed of at once on the Chicago market. The appellant did not notify respondent of the condition of the fruit when it reached Chicago, but notwithstanding its ripe condition, permitted it to go forward to Washington. When the car arrived there, the fruit was overripe and the purchaser refused to accept it. Still the appellant did not notify respondent of what had happened at Washington. Instead, it shipped the fruit to Philadelphia, where it was sold at auction, bringing a relatively small price. It appears from the testimony that this fruit could have been sold at Chicago at the time it was there at $2 per box, and that, had respondent been notified of its condition when it reached Chicago, it would have instructed that the fruit be disposed of there at that price. The second car was also inspected at Chicago, and when it reached Washington the purchaser, W. H. Harrison, refused to take the same unless it was reduced in price twenty-five cents per box. Respondent was not notified of this fact. Appellant caused the car to be shipped to Philadelphia, where the fruit was sold at auction. It appears

that, had the appellant notified respondent that Harrison would take the fruit at the reduced price, respondent would have directed a sale to him at that price. When the third car reached Chicago, its destination, the purchaser refused to take the fruit because a good many boxes of it were undersized. This purchaser, however, agreed to take the fruit, provided it was discounted twenty-five cents per box. The respondent was not notified of this condition or of the prospective sale, and appellant sent the car on to Buffalo to be sold to one of its clients. When the car reached Buffalo, the client would not accept the fruit, and the car was finally landed in Boston, where it was sold at auction. It appears from the testimony that, had the respondent been notified that Wignall & Moore Company would have purchased the fruit in Chicago at a discount of twenty-five cents per box, it would have accepted that offer and directed the sale to be made. The appellant has never paid the respondent anything on account of these three cars of fruit. It appears, however, incidentally, that at one time appellant tendered respondent certain sums, which probably represented all or a portion of the moneys which the fruit brought when sold at auction.

While the appellant does not concede that the facts are as above related, yet the evidence was sufficient to convince the jury, and is sufficient to convince us, that the foregoing statement is correct.

Appellant makes two chief claims of error; one being that there is a fatal variance in the proof from the allegations of the complaint, and the other that in no event, under the testimony, was the respondent's contract made with it, and therefore it could not be liable. Appellant claims that the complaint alleges that these cars of fruit were given over to its exclusive control and disposition, whereas plaintiff's testimony was to

the effect that, while the actual physical possession of the fruit was turned over to appellant, respondent retained full control and power of disposition, and was to be notified as hereinbefore related. If it should be conceded that there was a variance as claimed, the appellant is in no position to take advantage of it. When counsel for appellant was making his opening statement to the jury, counsel for defendant interposed the following:

"I am going to reserve my statement, and I want to be sure that we understand counsel as to one point that seems to me quite important. Counsel says that in each instance the exclusive control of these cars was retained by the plaintiff, that is, by the Umpqua Valley Fruit Union. In his complaint, for instance, in paragraph 4 of the first cause of action, they say that the plaintiff turned over the exclusive control and delivery of said fruit to said defendant as provided by said agreement. Now, I do not particularly care which theory they adopt, but I want to be sure that they adopt one now and stay by it."

The plaintiff's counsel then stated: "They had no power of disposition of the fruit without notice to the shipper." It would seem, therefore, that, at the very outset of the trial, the appellant knew what the contentions of the respondent would be in these regards, and that the complaint would be considered as amended. Appellant did not claim surprise, nor did it ask for a continuance on account of the alleged variance. We are of the opinion that it is not in any position to complain of any alleged variance.

But it is contended that the testimony shows that the respondent's contract was made with the Western Oregon Fruit Distributors and not with appellant. It would not serve any useful purpose to go particularly into the testimony, which convinces us, and appears to have convinced the jury, that the contract was made

with the appellant. The court by appropriate instructions submitted this exact question to the jury, and in finding for the plaintiff it must have found that the contract was made with the appellant. While practically all of the dealings were had between the respondent and the Western Oregon Fruit Distributors, yet it does not follow that the contract was with the last named concern. The testimony plainly shows that that organization was acting as agent for the appellant, and the latter was bound by its action.

In the course of the defense, the appellant undertook to prove, by the oral testimony of one of its witnesses, that the Western Oregon Fruit Distributors was a corporation. The trial court rejected this testimony on the ground, apparently, that the existence of a corporation could not be proved by parol. Appellant claims that this ruling was erroneous. In this we agree. This court has held in so many cases that the fact of incorporation may be proved by oral testimony that it is not necessary to cite the decisions. However, it did not make the slightest difference whether 'the Western Oregon Fruit Distributors was a copartnership or a corporation, or any other manner of organization. The testimony sought to be elicited was entirely immaterial. The court might well have sustained the objection on the ground that it was immaterial. Such being the case, the appellant was not injured by the ruling of the court.

As we read the testimony, the appellant's chief defense on the merits was that it had used its best judgment in the handling and disposition of respondent's fruit, but made very little effort to show that it had notified respondent of the various troubles that fruit had gotten into at Chicago and Washington. Evidently, the jury believed that the respondent was entitled to this notice. All these questions were properly

submitted to the jury under correct instructions, and we are bound by its verdict.

We find no error in the record, and the judgment is affirmed.

HOLCOMB, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.