[No. 24762.  Department One.  December 18, 1933.]

WILLIAM CLIFFORD, *Respondent,* v. GUY M. WILCOX *et al., Appellants.*[1]

[1]Reported in 27 P. (2d) 722.

*Louis P. Donovan* and *Donovan & Donovan,* for appellants.

*G. M. Ferris,* for respondent.

Steinert, J.—This is an action to recover for services rendered by plaintiff to defendants under a written contract, by the terms of which plaintiff was employed to procure, or else to collect for, certain corporate stock claimed by defendants to be owing to them. A trial before the court without a jury resulted in findings of fact and conclusions of law favorable to plaintiff, on which a judgment in the full amount prayed for was entered. The defendants have appealed.

The material facts of the case, as shown by the evidence, are these: In May, 1922, the appellants, by written contract, leased to Dakota-Montana Oil Company, a North Dakota corporation with its principal office at Kenmare in that state, certain oil lands in Montana, for which the appellants were to receive as consideration thirty-five thousand shares of capital stock of the corporation. Of this amount of stock, appellants received only three thousand shares, the oil company refusing, or at any rate failing, to deliver the remainder. Between May, 1922, and the latter part of December, 1925, appellants had made repeated efforts to procure the outstanding portion of stock owing to them, but without success.

For some time prior to December, 1925, the respondent, a resident of Mohall, North Dakota, had been a stockholder of the Dakota-Montana Oil Company, and,

as such, was interested in its affairs and was well acquainted with its officers and directors. During the summer of 1925, respondent, while engaged in doing some work in the oil fields in Montana near the place where appellants resided, was approached by appellants with a view of obtaining his services in procuring for them the remainder of the stock to which they claimed to be entitled. As a result of the negotiations between appellants and respondent, a formal contract was entered into on December 28, 1925. It is conceded that, although the contract was signed by the appellants in Montana, its execution was finally completed by respondent's signature in North Dakota. The portion of the contract with which we are here concerned reads as follows:

"Now, THEREFORE, Whereas the said parties of the first part [appellants] are desirous of recovering said stock and getting possession of the same, the said parties of the first part do hereby agree to and with the said party of the second part herein [respondent] that they hire and employ him to look after the recovery of said stock for them from said company or its officers, and do hereby agree to pay him as compensation for his services in looking after the matter in procuring said stock or its value ½ of all the stock that shall be recovered or its value. Party of the second part hereby agrees to and with the said parties of the first part that he will handle such matter for them and bring such action or proceedings as is necessary against the company, or its officers, to collect or procure all of the capital stock of the said company due the parties of the first part heretofore mentioned; and second party agrees to and with the said parties of the first part that he will employ all necessary attorneys and counsel that is necessary to handle such litigation or proceedings that will be necessary to collect and receive such stock, and further agrees to pay all attorney fees and costs in said matter excepting the court costs; and that he shall receive as his compensation for looking after and handling said matter,

½ of the capital stock so recovered, or ½ of the value of the capital stock so recovered, and the parties of the first part shall receive ½ of the capital stock so recovered, or ½ of its value.

"It is further agreed between the parties that the said party of the first part shall not have to pay any attorney fees or expenses in the matter in event nothing is recovered, and in event any of said capital stock is recovered then they shall not pay any fees or costs in the matter, excepting that they shall deliver to the party of the second part ½ of the capital stock so recovered and ½ to themselves, free of charge. This is the compensation to be paid whether the matter is settled by litigation or otherwise."

Pursuant to the execution of the contract, respondent entered upon the performance of his duties thereunder. He first proceeded by making an examination of the books and records of the company, and then by holding interviews and consultations with its various officers. In this way, he not only informed himself concerning the attitude that the company was taking with reference to the stock, but also succeeded, by an adroit maneuver, in having a certain portion of the stock in question voted as that of appellants, at one of the company's meetings. By these efforts, appellants' case was materially fortified. In passing, it may be observed that the stock was then selling at two dollars per share, so that appellants' interest was of the value of about sixty-four thousand dollars. As he proceeded, respondent regularly advised appellants of the progress that he was making. It was respondent's plan to obtain a voluntary delivery of the stock by the oil company, if possible, or, failing in that, to resort to litigation.

Finally, on January 20, 1926, the respondent wrote to appellants advising them of the situation as it then stood, and at the same time suggesting that a good compromise would be better than a lawsuit, owing to

the fact that, by the time that the litigation should be ended, the value of the stock might have depreciated. In his letter, respondent asked appellants what their preference with respect to the matter was. Under date of January 26, 1926, appellants advised respondent by letter that they were in favor of compromising on the basis of a fair settlement. Respondent then continued his activities, and finally. succeeded in arranging for a meeting between appellants and the officers and directors of the company on or about February 27, 1926, at Shelby, Montana, for the purpose of making some adjustment of appellants' claim.

On or about February 26, 1926, respondent went to Shelby, where appellants resided, and held a conference with them regarding the proposed meeting and compromise. It was agreed that they should meet the next morning and together attend the conference which had already been arranged for with the officers of the oil company. Early the next day, however, the appellants anticipated respondent's plans by opening negotiations direct with the company, as a result of which they personally compromised their claim for a cash payment of twenty-one thousand dollars. This was done in the absence, and without the knowledge, of respondent. This action by respondent is the result of appellants' interference and independent settlement.

In their answer, appellants set up the defense, among others, that the contract between appellants and respondent was illegal and void. The court made a finding to the effect that the original contract had been modified by the subsequent correspondence in which the respondent had been authorized to compromise the claim without suit.

Under their first assignment of error, appellants contend that the court erred in finding that the contract had been modified. The letter from appel-

lants to respondent, under date of January 26, 1926, authorizing a compromise, went in as evidence without objection. The letter from respondent to appellants, under date of January 20, 1926, suggesting the compromise, was subsequently admitted over objection. The letter of appellants, however, was the material one, because it referred to the prior correspondence and gave respondent the authority to proceed with the compromise. But, in any event, when the evidence went in, appellants claimed no surprise, and did not ask for a continuance on the ground that the proof varied from the pleadings. Under such circumstances, the objection is not a tenable one now. In *O'Neill v. Matthews,* 126 Wash. 360, 218 Pac. 222, we said on page 363:

"It is claimed by appellants that respondent did not prove the cause of action set forth in his complaint, but some other cause of action; that there was a variance between the pleadings and the proof. The failure of the appellants to demand a continuance upon the ground that there was a variance, if any, constituted a waiver and in considering this case upon appeal we look to the proof and consider the complaint amended to meet this proof.

" 'Appellant did not claim surprise, nor did it ask for a continuance on account of the alleged variance. We are of the opinion that it is not in any position to complain of any alleged variance.' *Umpqua Valley Fruit Union v. North Pac. Fruit Distributors,* 108 Wash. 265, 183 Pac. 101.

" 'That attack on the complaint, however, is not important or controlling at this time under § 1752, Rem. Code (P. C. § 7336), which provides that on appeal this court shall dispose of all causes upon the merits thereof, disregarding technicalities, and to consider all amendments which could have been made as made; . . .' *Gregg v. Gregg,* 117 Wash. 164, 200 Pac. 1084."

See, also, *Hubbard v. Hartford Fire Insurance Co.,*

135 Wash. 558, 238 Pac. 569; 240 Pac. 565; *McCallum v. McCallum,* 153 Wash. 1, 279 Pac. 88; *Cogdal v. Department of Labor and Industries,* 170 Wash. 639, 17 P. (2d) 55, which are to the same effect.

■ Appellants' main contention under their various assignments of error is that the contract is illegal and void, in that respondent, although not admitted to practice law, agreed with appellants to bring such action or proceedings as might be necessary against the company in order to procure the stock, and for that purpose to employ all attorneys and counsel necessary, and to pay all attorneys' fees and costs incident thereto, excepting court costs.

Certain sections of the North Dakota and Montana statutes were pleaded and proved by appellants. The case was tried below on the theory that the law of North Dakota was controlling, and it is likewise so urged here by appellants. We will, therefore, proceed upon that theory and confine ourselves to the North Dakota law, to the extent that it was established in the case.

■ The main statute relied on by appellants is § 788 of the Compiled Laws of North Dakota, 1913, which reads:

"No person shall hereafter be admitted to practice as an attorney and counselor at law, or to commence, conduct or defend any action or proceeding in any of the courts of record of this state, in which he is not a party concerned, unless he has complied with and been admitted under and pursuant to such rules as the supreme court of this state shall prescribe."

Respondent was, concededly, not admitted to practice law in either North Dakota or Montana. But we do not think that the above statute applies here. No case from North Dakota construing that statute was cited to the court below, nor is any cited here. We

must, therefore, for the purposes of this case, place our own construction upon it. We are of the opinion that the above statute applies only to one who as an attorney actually assumes to "commence, conduct or defend" an action or proceeding in a court of record, and not to a layman, like the respondent, who merely agrees to attend to the collection of a debt or the settlement of an obligation, and to employ, at his own expense, such counsel as may be necessary in order to enforce collection by litigation.

If the contract is to be held illegal and void at all, it must be, not because respondent has therein agreed to perform services which only an attorney can perform, but because it was champertous in its nature. Here, again, we are controlled by the law of North Dakota, and, for the purposes of this case, by the law of that state as it was made a part of the record now before us.

Appellant introduced no evidence at all to the effect that the contract was champertous under the law of North Dakota. No statute nor any decision in that respect was offered in evidence, either directly or through the testimony of any witness. On the other hand, respondent produced a witness who had practiced law in North Dakota for twenty-two years, had been corporation counsel of Fargo for two years, and prosecuting attorney of Cass county for four years. The witness testified that the common law of champerty and maintenance had been repudiated in North Dakota, citing as authority for his statement *Woods v. Walsh,* 7 N. Dak. 376, 75 N. W. 767; *Greenleaf v. Minneapolis, St. Paul & S. S. M. Ry. Co.,* 30 N. Dak. 112, 151 N. W. 879, Ann. Cas. 1917D, 908; and *Rohan v. Johnson,* 33 N. Dak. 179, 156 N. W. 936, Ann Cas. 1918A, 794, L. R. A. 1916E, 64.

While we do not believe that the state of North

Dakota has gone so far as to wholly abrogate the rule against champerty and maintenance, nevertheless it does appear that the rigor of that rule has been greatly mitigated in that state. In the *Rohan,* case, *supra,* the court, by direct statement and by quotation from other authorities, pointed out that the original reasons for the protest against champertous contracts no longer exist, and that the gist of the offense is, at the present time, the malicious or officious intermeddling in a suit in which the intermeddler has no interest. The court recognized the fact that the services of non-professional agents may be desirable, or even necessary, in collecting or enforcing claims, and the trend of the opinion seems to be that, if the agreement appears to be a *bona fide* one to furnish assistance or funds to recover property, even though litigation be contemplated, it will be upheld; that, while such contracts are to be carefully scrutinized, nevertheless the courts, in the administration of complete justice, will consider whether the particular contract has a *bona fide* object or whether it is an unfair and illegitimate. transaction, gotten up for the mere purpose of spoil or speculation. There are some expressions in the concluding portion of the opinion from which appellants herein might draw some conclusions favorable to their contention. But reading the opinion as a whole, we interpret it according to the construction that we have just placed upon it.

Coming back to the immediate situation before us, as presented by the evidence in the case, respondent was not an officious intermeddler seeking to stir up litigation or desiring to inject himself into the prosecution of a claim of doubtful nature, or to effect an extortionate or unconscionable settlement. He was sought out by the appellants, who felt that he, because of his ability and his intimate knowledge of the affairs

of the company, would be able to procure for them that for which they had so long and so unsuccessfully striven. That it was his efforts that led to the ultimate settlement, there can be no question. He performed his part of the contract.

When the goal was in sight, the appellants, unable to resist the temptation to precipitate an immediate offer of settlement, injected themselves into the situation, and by hasty action precluded respondent from accomplishing a result that was then practically certain. Unfortunately, too, it seems that they accepted the sum of twenty-one thousand dollars for stock which then was worth sixty thousand dollars. In this way, they deprived not only the respondent, but themselves as well, of a handsome margin of return. Respondent, however, is now seeking to recover no more than one-half of what appellants actually got. To this, we think, he is clearly entitled.

The judgment is affirmed.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.