COX et al. v. FREEMAN et al.
HENTHORN et al. v. HART et al.

No. 33934. Jan. 30, 1951.
Rehearing Denied Feb. 20, 1951.

*227 P. 2d 670.*

Hervey, May & Owens, Oklahoma City, for plaintiffs in error.

W. D. Hart, Pauls Valley, for defendants in error.

James S. Twyford, Oklahoma City, amicus curiae.

O'NEAL, J. This appeal involves the validity of a contract of employment in connection with a proceeding to vacate a judgment quieting title to real estate based upon a resale tax deed.

George F. Henthorn, a resident of Peoria, Illinois, died, testate, unmarried, and without issue, in 1931. At the time of his death he owned a number of tracts of land in Oklahoma and held mortgages on other tracts. A part of the land owned by deceased was a 40-acre tract in Garvin county, Oklahoma, described as:

The Northwest Quarter of the Southeast Quarter of Section 7, Township 1 North, Range 2 West of the I. M. By the will, certain heirs and relatives of deceased were vested with interests in this and other lands. The estate was managed, for a few years, by the First Trust & Savings Bank of Peoria, Illinois, the executor named in the will. December 2, 1937, the beneficiaries un-

der the will entered into a trust agreement whereby the title to said lands was vested in four trustees, named therein, Florence Henthorn, Edwin P. Henthorn, Clare F. Henthorn, and Fred E. Bayles. The primary purpose of the trust was declared to be to convert the property of the estate of George F. Henthorn, deceased, into cash, as expeditiously as possible. The trust was to run for a period of ten years with the provision that if all of said estate was not reduced to cash within said ten years, the trustees were directed to sell the same at reasonable prices. Said trustees failed to pay the taxes levied against said 40 acres of land and the same was sold for taxes at the 1940 resale. M. G. Cox and Clara E. Cox, husband and wife, by mesne conveyances, became the owners of the title acquired under the resale deed.

February 7, 1945, M. G. Cox and Clara E. Cox commenced an action in the district court of Garvin county to quiet the title to said 40 acres. Named in said suit as defendants were L. H. Schwabacher, if living, and if dead, his unknown heirs, executors, administrators, devisees, trustees and assigns, immediate and remote, and George F. Henthorn, if living, and if dead, his unknown heirs, executors, administrators, devisees, trustees and assigns, immediate and remote. Service by publication was had as to defendants L. H. Schwabacher and George F. Henthorn, and their unknown heirs, executors, etc.

On March 26, 1945, the district court of Garvin county examined and approved the summons by publication and proof thereof, and entered judgment quieting title to said lands in M. G. Cox and Clara E. Cox. The Sohio Oil Company acquired a block of oil and gas leases covering a part of township 1 north, range 2 west of the I. M., in Garvin county, and during 1946 said company was drilling a well for oil and gas on a lease in section 17 about one mile from the land here involved. The Sohio Company drilled said well

as, what is termed in the oil business, a "tight well," that is, the company would not allow outsiders to come on the premises and refused to give the public any information concerning the well, its depth, or the nature of the various formations encountered in drilling the well. Late in December, 1946, information had "leaked out" to the effect that the well was about to be completed as a producing well. On January 23, or 24, 1947, it became generally known that said well had been completed, or was about to be completed, as a highly productive oil well. That information was also published in the newspaper of Oklahoma City and Pauls Valley.

During the time said well was being drilled, defendant in error, Walter L. Hart, a resident of Pauls Valley, was engaged in the real estate business and was active in buying and selling oil and gas leases, and mineral interests in Garvin county. He had theretofore been in the abstract business and had obtained considerable knowledge of the nature of titles based upon resale tax deeds. He had learned, what was then common knowledge in Pauls Valley and vicinity, that there were probably fatal defects in many, if not all, of the resale tax deeds issued in Garvin county in 1940, and that one or more of such deeds had been declared void by the district court of Garvin county, and by the Supreme Court. In the course of such business Walter L. Hart had had some transactions with George W. Campbell, an attorney of Peoria, Illinois, relating to the sale of oil and gas leases, or mineral interests. George W. Campbell had represented George F. Henthorn in his lifetime in matters concerning securities and other properties in Oklahoma. He had also represented, or assisted, the First Trust & Savings Bank of Peoria, Illinois, while it was acting as executor of the will of George F. Henthorn, and had for a while, up to about 1937, represented or advised the trustees of said estate. At that time his relation as attorney was

canceled and thereafter he ceased to represent any interest connected with the George F. Henthorn estate.

Sometime prior to January 30, 1947, George W. Campbell had occasion to call Walter L. Hart over the telephone concerning some transactions for one of Campbell's clients. During the course of the conversation Hart mentioned the fact that the county records showed that one George F. Henthorn was the former owner of a 40-acre tract of land in Garvin county which had been sold for taxes at resale, and that the resale tax deed was possibly invalid, and mentioned the possibility that the former owners might recover the land. Thereupon Campbell informed Hart that George F. Henthorn was then dead and had been dead for about 15 years, and that the title to the property of the estate was in four trustees, and that he, Campbell, knew the legatees and trustees, and that one of them, Fred E. Bayles, lived in Peoria, Illinois. Thereupon Walter L. Hart entered into an agreement with Campbell whereby he employed Campbell to assist him in an endeavor to get the Henthorn trustees to employ Hart to bring a suit to recover, or restore, title to the 40-acre tract of land, above described, in the Henthorns. He proposed to enter into a contract to bring such litigation and pay all costs of attorney's fees, court costs, all moneys required to be tendered by the court in redemption of tax deed for the estate, and any and all other moneys in connection with said suit. His compensation was to be an oil and gas lease and mineral deed, the latter instrument to convey one-half of the minerals recovered. Campbell accepted said employment and agreed to assist Hart in procuring such contract. Campbell's compensation was to be $100. On or about January 30, 1947, Walter L. Hart prepared a proposed contract in writing as follows:

"Peoria, Illinois
"30 January 1947

"Mr. Walter L. Hart
"Box 451
"Pauls Valley, Oklahoma

"Dear Sir:

"We the undersigned are desirious (sic) of bringing suit to acquire and quiet title to:

"The NW 1/4 of the SE 1/4, Section 7, Township 1 North, Range 2 West, in Garvin County, Oklahoma."

"And we do hereby employ you to bring said litigation and to pay all costs of attorneys, court costs, all monies required to be tendered by the court in redemption of Tax Deed for the estate and any and all other monies ·in connection with said suit. And to compensate you we do hereby agree to give you the Oil and Gas Lease and a Mineral Deed, said latter instrument covering 1/2 (One-half) of the minerals recovered. Both of said conveyances, Oil & Gas Lease & Mineral Deed, we have this day executed and deliver herewith as a part of this contract.

"Yours very truly,

"Read and accepted
"Walter L. Hart."

At the same time he prepared an oil and gas lease covering the 40-acre tract and a mineral deed conveying one-half of the mineral interest in said land. The mineral deed named Home Petroleum Company as grantee. The oil and gas lease named F. P. Diffie as lessee. Hart mailed said proposed contract, oil and gas lease, and mineral deed to Campbell who was to attempt to get the signatures of the trustees thereto. Campbell took the matter up with Fred E. Bayles, one of the trustees, and Bayles presented the matter to the other trustees. One of the trustees, Edwin P. Henthorn, had died, and Lincoln Henthorn was elected as his successor. Campbell assisted the trustees in the matter of the election of the successor trustee.

The contract and oil and gas lease were signed by the Henthorn trustees about March 9, 1947. The mineral deed was signed about March 21, 1947. Before the Henthorn trustees signed the contract they interlined therein in longhand, immediately after the description of the land, the following:

"We to acquire all back tax receipts and including 1947 on the above described property."

so as to make the contract read:

"Peoria, Illinois
"30 January 1947

"Mr. Walter L. Hart,
"Box 451
"Pauls Valley, Oklahoma.

"Dear Sir:

"We the undersigned are desirious (sic) of bringing suit to acquire and quiet title to:

"The NW 1/4 of the SE 1/4, Section 7, Township 1 North, Range 2 West, in Garvin County, Oklahoma."

(Written in longhand: "We to acquire all back tax receipts and including 1947 on the above described property")

"And we do hereby employ you to bring said litigation and to pay all costs of attorneys, court costs, all monies required to be tendered by the court in redemption of Tax Deed for the estate and any and all other monies in connection with said suit. And to compensate you we do hereby agree to give you the Oil and Gas Lease and a Mineral Deed, said latter instrument covering 1/2 (One-half) of the minerals recovered. Both of said conveyances, Oil & Gas Lease & Mineral Deed, we have this day executed and deliver herewith as a part of this contract.

"Yours very truly,

"/s/ Clare F. Henthorn
"/s/ Florence Henthorn
"/s/ Lincoln Henthorn
"/s/ Fred E. Bayles, Trustee
    for Stella C. Bayles."

"Read and accepted,
/s/ Walter L. Hart."

Walter L. Hart, individually, and as agent for the Henthorn trustees, employed the law firm of Twyford, Smith & Crowe as attorneys, to take such measures as were necessary to vest the title in said land in the Henthorn heirs, representatives and trustees, or such of them as might be vested with title to the George F. Henthorn estate, and to appear in all courts in which it was necessary to appear. Hart agreed to pay all court costs, redemption money, and such other moneys as might be required. As compensation for such services Hart agreed to and did set over and convey to said firm an undivided one-third interest in and to the oil and gas lease executed by the Henthorn trustees to F. P. Diffie, and an undivided one-third interest in and to the oil, gas and other minerals conveyed by the trustees of said estate to Home Petroleum Company, a business trust. In connection therewith Hart executed or had executed proper assignment of the one-third interest in the oil and gas lease and the mineral deed conveying a one-third interest in and to the oil, gas and other minerals in and under said land to Twyford, Smith & Crowe.

March 20, 1947, an application and motion to vacate and open the judgment of March 26, 1945, quieting title to said land in M. G. Cox and Clara E. Cox was filed in said court by Twyford, Smith & Crowe on behalf of Charles A. Henthorn, Florence Henthorn, Lincoln Henthorn and Stella Bayles. In connection therewith they presented a proposed answer in said cause wherein they asserted that the resale tax deed under which M. G. Cox and Clara E. Cox claimed title was void, or voidable, upon some five or six different grounds. On or about May 5, 1947, the Henthorn trustees, by registered mail, sent Walter L. Hart a notice purporting to revoke the contract of employment between the Henthorns and Walter L. Hart. At or about the same time said trustees, by registered mail, notified Twyford, Smith & Crowe that said trustees had never employed Twyford, Smith & Crowe to represent them in litigation, and that the said trustees desired and intended to have a lawyer selected by them to represent the trustees in said litigation. In the meantime, the mineral deed which Hart had obtained in the name of Home Petroleum Company had been assigned to one H. E. Martin. May 8, 1947, Walter L. Hart, F. P. Diffie, H.

E. Martin, and the Home Petroleum Company, a business trust, obtained an order from the district court of Garvin county for leave to file an intervening petition, and on the same day, said Walter L. Hart and others filed their petition in intervention, wherein they set up the oil and gas lease and mineral deed theretofore executed by the Henthorn trustees. They prayed for an order permitting them to join in the action to defend as against the resale tax deed, and that the resale tax deed be canceled, and that the title of interveners to and interest in the oil and gas lease and mineral deed be quieted. December 3, 1947, the Henthorns filed a petition for removal of the action to the United States District Court for the Eastern District of Oklahoma and an order of removal was issued. February 23, 1948, an order was entered remanding said cause to the district court of Garvin county. Thereafter a hearing was had on the application to reopen the judgment of March 26, 1945, quieting title of the land in M. G. Cox and Clara E. Cox. July 7, 1947, the court entered an order vacating said judgment, and from said order M. G. Cox and Clara E. Cox appealed to the Supreme Court where said order was affirmed. Cox v. Henthorn, 201 Okla. 689, 209 P. 2d 681.

Thereafter hearing was had on the issues as between the Henthorns, Hart, Diffie, Martin, and Home Petroleum Company. It was shown that the Home Petroleum Company is a business trust owned and controlled entirely by Walter L. Hart and his two sons, Walter Dean Hart and Jack Hart. At the hearing it was stipulated that Walter L. Hart is the sole owner of the mineral deed and the oil and gas lease, except the interest shown by the assignments made to J. H. Twyford and S. W. Smith, attorneys, and that any title that any other parties may have is held in trust for Walter L. Hart. At the hearing testimony and documentary evidence covering nearly 1,000 typewritten pages was taken. At the close thereof the trial court, after making extended findings of fact, made conclusions of law to the effect that:

(1) No fraudulent representations or concealments were made by Walter L. Hart to George W. Campbell, or through George W. Campbell to Bayles, or the other trustees in the execution and delivery of the contract of employment of January 30, 1947, and the execution and delivery of the oil and gas lease and the mineral deed.

(2) That as a matter of law Walter L. Hart did not by the terms of said contract agree to practice law in any regard in respect to said contract, and that insofar as the trustees are concerned said contract was not champertous in any respect, and is not contrary to the statutory provisions against champerty, or common law champerty.

(3) That the contract of January 30, 1947, and the oil and gas lease, and the mineral deed made pursuant thereto are not and were not contingent, but the same created an agency in Walter L. Hart coupled with a vested interest of the subject matter of the agency and are irrevocable.

(4) That the trustees were authorized to employ attorneys and agents under their trust agreement to procure the property of the trust estate, and that the contract in question with Walter L. Hart, was authorized by such agreement. That the contract made by Walter L. Hart with Twyford, Smith & Crowe, in connection with accomplishing the purpose of the agency, was and is valid, and that said attorneys have fully performed said contract, and have a vested interest in the Walter L. Hart interest by proper conveyances to an undivided one-third interest in the oil and gas lease and mineral deed in question.

(5) The court further concludes as a matter of law that the intervener, Walter L. Hart, is entitled to judgment as prayed for in the intervening petition quieting his title as against the trustees and heirs of the Henthorn estate in and to an oil and gas lease upon

the 40-acre tract of land in question, and an undivided one-half interest in and to the minerals in and under said land, and for the costs of this action, which judgment shall be subject to the rights of James S. Twyford and Solon W. Smith, only, under their conveyance from Walter L. Hart and his nominees.

Judgment was entered in accordance with the findings of fact and conclusions of law, and the Henthorn trustees appeal.

There are fourteen assignments of error. They are not presented in their order as set out in the petition in error, and such of them as are relied upon are presented under eight propositions.

The first proposition is that the Henthorn-Hart contract is voidable, if not void, because procured by actual or constructive fraud on the part of Hart.

The alleged fraud relied upon is that Walter L. Hart in negotiating for the contract failed to inform the plaintiffs in error that the well, known as the Howard well, located in section 17, township 1 north, range 2 west of the I. M., about one mile from the land here involved, had been brought in or completed, and was producing oil at the rate of about 100 barrels per hour, and that as a result thereof the market value of oil and gas leases and mineral interests in that vicinity had greatly increased. As stated above, the record shows that Hart in negotiating for said contract did not communicate directly with the trustees of the Henthorn estate, or any one of them. All the negotiations were conducted through George W. Campbell of Peoria, Illinois. Sometime prior to January 30, 1947, Walter L. Hart had information as to the title of the 40-acre tract; that it had been owned by George F. Henthorn in his lifetime; that it had been sold at resale for delinquent taxes, and that Cox's title thereto was based upon the resale tax deed, and that possibly the resale tax deed was fatally defective, or void. In his conversation with Campbell, Hart informed Campbell that there

were oil activities in the vicinity; that the 40 acres had a prospective or a speculative value for oil, and that it would, or might, make the Henthorns "nigger rich" (whatever that term may mean) if they could recover it and clear up the title. George W. Campbell conveyed that information to Fred E. Bayles, one of the trustees, and also told him that the land must have some potential value for oil and gas, otherwise Hart would not be interested in it. Bayles in turn passed that information on to the other trustees before March 10, 1947, when the contract and the oil and gas lease were signed by the trustees. George W. Campbell also informed Bayles that he, Campbell, was acting for Hart in the matter and was being paid by Hart, and that he was not charging the Henthorns anything for his services, and Bayles passed that information on to the other trustees. The contract, dated January 30, 1947, but not signed until about March 10, 1947, and not delivered until about March 21, 1947, of itself, showed that the land in question must have had considerable value for oil and gas, or at least that Hart considered it of considerable value for such purposes in that he was agreeing to pay all costs of the suit, all attorney's fees, redemption money, and all other moneys necessary to be paid, and was to be reimbursed only out of whatever value the oil and gas lease and mineral deed might have. Whatever value the land had for oil and gas was open for ascertainment by the Henthorn trustees from on or before March 10, 1947, to March 21, 1947. They had full opportunity to investigate the matter during that time. From the record as a whole we cannot say that the findings of the trial court that no misrepresentations were made by Hart and no facts were concealed by him, and the judgment based thereon, are clearly against the weight of the evidence.

The second proposition is that the consideration exacted by Hart for the services rendered, which were legal in nature, shows fraud. Thereunder plain-

tiffs in error cite 5 O.S. 1941 §7, providing that:

"It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action, or claim not to exceed fifty percentum of the net amount of such judgment as may be recovered. . . ."

Said section has no application to a layman merely agreeing to bring suit and pay all costs of attorneys, all court costs, redemption money and all other moneys in connection with the suit. Clifford v. Wilcox, 175 Wash. 513, 27 P. 2d 722. Counsel for plaintiffs in error assert that Hart exacted compensation to the extent of 75% of the value of the land to be recovered, but do not point out any evidence in the record tending to prove the assertion.

The third proposition is that the consideration paid by Hart for the mineral deed and the oil and gas lease is so grossly inadequate as to show fraud.

It is well settled that in the absence of fraud, inadequacy of consideration alone is insufficient to vitiate a contract. The trial court found and held that there was no fraud. At most, the record shows a possible improvident contract on the part of the Henthorns.

The general rule is:

"Where a contract has been voluntarily, understandingly, and fairly entered into, and is free from fraud, accident, mistake, or any other circumstance recognized as a ground for equitable relief, a court of equity must, when its jurisdiction is properly invoked, give full force and effect to such contract; it cannot ignore, disturb, or alter the rights created by it, or grant relief against their enforcement." 30 C.J.S. 411.

The fact that for one of the parties the contract is unwise or improvident, or that its enforcement is harsh when it was so intended to be, does not alter the rule. 30 C.J.S. 411. See, also, Standard Lumber Co. v. Deer Park Lumber Co., 104 Wash. 84, 175 P. 578; 17 C.J.S. 702. Hill v. General Petroleum Corporation, 128 Cal. A. 284, 16 P. 2d 1035.

The fourth proposition is that the Henthorn-Hart contract is contrary to public policy and void.

The contention is that Hart, a layman, and not entitled to practice law, undertook, for a pecuniary consideration, to perform services which can be legally performed only by a licensed attorney. The trial court found that Hart, after receiving the contract, oil and gas lease and mineral deed, entered into the performance thereof and employed Twyford, Smith & Crowe for said purpose, who, in turn, filed proper motions, notice and answers, Hart advancing all necessary expenses, and procured the opening of the judgment and restoration of the rights of the trustees to defend said action. The court then made the following conclusions of law:

"The court concludes as a matter of law, that Walter L. Hart did not by the terms of said contract, agree to practice law, and did not practice law in any regard in respect to said contract. . . ."

The contract, by implication, provides that Hart was to employ attorneys to bring and prosecute the litigation and specifically provides that Hart was to pay all costs of attorneys and other costs. Hart did employ attorneys and the attorneys, so employed, conducted the litigation to the point where the judgment was opened. Walter L. Hart never appeared or attempted to appear or act as an attorney in said litigation. The wording of the contract does not expressly authorize Walter L. Hart to practice law, and the record does not show that he did so. Under the evidence and the rule stated in Norris v. Van Hendel, 196 Okla. 164, 163 P. 2d 217, the contract is not invalid.

The fifth proposition is that the court erred in refusing to sustain the Henthorns' special appearance and motion to quash in connection with the petition in intervention and notice to the Henthorn trustees.

The court, on July 7, 1947, sustained the special appearance and motion to quash, but later, July 18, 1947, on motion of interveners, vacated the order sustaining the motion to quash. One of the grounds upon which the trial court vacated its former order sustaining the motion was that the Henthorn trustees had entered their general appearance. There was no error in the order.

The sixth proposition is that the Henthorn trustees did not have the power to delegate their right to prosecute a suit in or on behalf of the estate.

There is no merit in this contention. The trust agreement, in the third and fourth paragraphs, provides:

"3. Said Trustees shall have full power to bring suit in their own name for the recovery of any money or other property due them, or for the foreclosure of any mortgage which is a part or shall hereafter become a part of this estate.

"4. Said Trustees shall have full power and authority to employ such attorneys, agents or other persons as may in the opinion of such Trustees be necessary or proper in the furtherance of the execution of this Trust, and may pay to such attorneys, agents, or other persons, such compensation as may in the opinion of such Trustees be reasonable."

Thereunder the trustees had full power to enter into the contract with Walter L. Hart.

The seventh proposition is, in effect, that the Henthorn-Hart contract being void, the contract with Twyford, Smith & Crowe is likewise void.

We have held that the Henthorn-Hart contract is valid. Therefore, we need not further consider the seventh proposition.

The eighth proposition is that an "interest" was not coupled with a "power" in the Henthorn-Hart contract, and therefore the contract is revocable and was effectively revoked by the Henthorns.

The general rule is:

"It is a well-settled general rule that if the authority or power of an agent is coupled with an interest, it is not revocable by the act, condition, or death of the principal before the expiration of the interest, unless there is some agreement to the contrary between the parties. This is a well-recognized exception to the rule that the death of the principal revokes the authority of an agent appointed by him. Moreover, the view has been taken that a power coupled with an interest will survive to the personal representative of the agent upon the death of the latter."

2 Am. Jur., Agency, sec. 77, pages 61-62. See, also, 2 C.J.S. 1159, where it is said:

" . . . where the authority given the agent is supplemented with an interest or estate in the subject matter of the agency itself, the rule is well established both at common law and by statute that both the right and the power to revoke the agency without the agent's consent is taken away; . . ."

As to what constitutes a power coupled with an interest the rule is:

"The person clothed with the power must derive, under the instrument creating it or from the nature of the relation, a present or future interest in the thing or subject itself on which the power is to be exercised, and not merely that which is produced by the exercise of the power." 2 Am. Jur. Agency, sec. 78, pages 62-63.

And:

"Whether an interest which will make an agency or power irrevocable exists in a particular case is to be determined from the entire agreement between the parties and from the facts and circumstances attending the relation existing between the parties." 2 Am. Jur., Agency, sec. 78, page 63.

In Filtsch v. Bishop, 118 Okla. 272, 247 P. 1110, it is held:

"A power of attorney which, in effect, is a mere contract of agency is revocable at the will of the principal, unless the contract constitutes 'a power coupled with an interest.' "

And:

"A power is coupled with an interest when the writing conveys, or vests in the agent, an interest or estate in the thing or property which is the subject of the agency, as distinguished from the proceeds or result of the exercise of the agency."

The contract here involved, in part, provides:

" . . . and we do hereby employ you to bring said litigation . . . and to compensate you we do hereby agree to give you the oil and gas lease and the mineral deed, said latter instrument covering 1/2 (One-half) of the minerals recovered. Both of said conveyances, Oil & Gas Lease & Mineral Deed we have this day executed and deliver herewith as a part of this contract."

Thereby the oil and gas lease and the mineral deed were expressly made a part and parcel of the contract. They conveyed a present interest in the property which is the subject of the agency. Together the contract and the oil and gas lease and mineral deed create a power coupled with an interest, and the contract is therefore irrevocable at the will of the Henthorns. The trial court so found and held, and there is no error therein.

Affirmed.

CORN, DAVISON, HALLEY, and JOHNSON, JJ., concur.