421 P.2d 318

Tyler D. GOODMAN and Joyce F. Goodman, husband and wife, and John M. Tollefson and Marjorie H. Tollefson, husband and wife, Appellants,

v.

NEWZONA INVESTMENT CO., Inc., an Arizona corporation, and Northern Arizona Title Co., an Arizona corporation, Appellees.

No. 8794–PR.

Supreme Court of Arizona.

In Banc.

Dec. 7, 1966.

Rehearing Denied Jan. 3, 1967.

Lesher, Scruggs, Rucker, Kimble & Lindamood, Tucson, for appellants.

Herbert B. Finn, Stephen T. Meadow, Phoenix, for appellees.

STRUCKMEYER, Chief Justice.

Appellants filed an action in the superior court asking that a deed from Northern Arizona Title Company to Newzona Investment Company, Inc., be declared void and that Newzona be declared to have no right, title or interest in certain real property in which appellants asserted the beneficial interest. Appellees' motion to dismiss appellants' complaint was granted by the trial court. The Court of Appeals, Division One, affirmed. 3 Ariz.App. 282, 413 P.2d 792. Opinion of the Court of Appeals vacated.

These salient facts control the decision: On June 15, 1961, appellants, as sellers, entered into a written agreement with Newzona for the sale of approximately 880 acres of land in Coconino County, Arizona. The property was conveyed by appellants to Northern Arizona Title Company, as trustee, to hold the title and to administer the agreement. A part payment was made upon execution of the contract, and the balance was to be paid in ten annual installments commencing on July 1, 1962. Newzona made the payments due on July 1, 1962 and July 1, 1963, but failed to make the payment due on July 1, 1964.

The agreement provided that Newzona was entitled to secure, in ten-acre lots, the release by the Title Company of as many acres as a payment would buy at $65.00 an acre. Newzona did not secure the release of any lots after the 1962 and 1963 payments. However, on August 20, 1964, after the failure to make the payment due on July 1, the Title Company deeded to Newzona acreage to the extent of the annual payments made in 1962 and 1963.

The agreement also contained what may be described as a "full performance" clause:

"* * * full performance by [Newzona] of all of its obligations hereunder is and shall be a condition precedent to its right to have a conveyance of the lots held hereunder and its rights to have performance hereof."

Appellants' position is simple: That Newzona was not entitled to a release of any lots on August 20, 1964, because it had not fully performed all of its obligations under this clause.

At this point it would seem plain, from the language of the full performance clause and the customary rules of construing written instruments, that Newzona was not entitled to the acreage transferred to it, since it had not performed by making the payment of July 1, 1964. Where parties bind themselves by a lawful contract, in the absence of fraud a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive. Galbraith v. Johnston, 92 Ariz. 77, 373 P.2d 587. The intent of the parties, as ascertained by the language used, must control the interpretation of a contract. It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement. Its duty is confined to the construction or interpretation of the one which the parties have made for themselves. Graham County Electric Co-op., Inc. v. Town of Safford, 95 Ariz. 174, 383 P.2d 169. Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto. Neale v. Hinchcliffe, 21 Ariz. 452, 189 P. 1116.

Notwithstanding, Newzona points to a clause in the agreement which provides:

"If default be made in the payment of principal or interest * * * and such default be not remedied within thirty days after notice to [Newzona], then [appellants] may declare a forfeiture of all rights of [Newzona] * * *. [Newzona] shall be deemed to be in default only when written notice thereof has been filed with the [Title Company] * * *."

It is argued that because appellants had not filed a written notice declaring Newzona in default at the time the deed was executed on August 20, 1964, the right still remained to secure a transfer of the lots.

 Newzona misconceives the purpose of the provision for a written default. The notice of default is necessary as a condition to exacting a forfeiture of the contract. Such notice of default has no connection with the full performance clause as set forth in the written agreement. One of appellants' rights was to prevent a conveyance of any acreage unless Newzona had fully performed all of its obligations *at the time of the conveyance.* This was a right wholly separate and independent of the right to exact a forfeiture and was not conditioned upon prior notice of default.

It is Newzona's principal contention that since it had performed every term and condition of the agreement up to the first day of July, 1964, and could then have requested the Title Company to execute the deed, the right vested and a deed could issue any time thereafter. Newzona points to the broad, unequivocal and seemingly all-inclusive language of the agreement that:

"Any portion of each annual payment * * * shall entitle [Newzona] to the release of property * * *."

 If, in arguing that the right to the release of property became vested at the time of the annual payment, Newzona means that it obtained a permanent right to the release of acreage, the answer is that this argument has merit only if the full performance clause is disregarded. But the full performance clause cannot be disregarded in construing the contract. It is axiomatic that a contract must be construed as a whole, Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003, and each and every part must be read in the light of the other parts. By the full performance clause, any right which Newzona might have had to a conveyance was lost by subsequent failure to comply with the terms of another part of the agreement. Hence, Newzona's right

was not vested in the sense that it forever after had a right to secure the lots.

 Newzona further argues that the lot release clause is divisible and severable from the remainder of the contract. It is true that, where the consideration for a contract can be apportioned, each item of the contract will be treated as a separate unit rather than a part of the whole, Allen D. Shadron, Inc., v. Cole (Supplemental Decision), 101 Ariz. 122, 416 P.2d 555; but here again Newzona must disregard the full performance clause. The release of acreage is specifically prohibited by the language of that clause, in that full performance is a condition precedent to a right to a conveyance. The lot release clause cannot be considered as severable without rendering nugatory the meaning of another part of the agreement.

Newzona quotes from Restatement, Contracts § 268(2):

"If a party has received all or substantially all the agreed exchange for a performance promised by him, his duty to render that performance is not conditional upon any further performance by the other party, *except when it is expressly so provided."* (Emphasis supplied.)

Here it was expressly so provided. The exception recognized in the Restatement controls this case. That portion of the agreement which Newzona asks the Court to hold severable and divisible is an integral part of the whole contract. It cannot be treated as if it stood alone in order to defeat the expressed intent of the parties.

 Newzona complains that appellants are seeking a harsh remedy and that such an interpretation of the contract is inequitable and therefore should not be adopted as the law of the case. But equity follows the law.

"Our equitable powers do not extend so far as to permit us to disregard fundamental principles of the law of contracts, or arbitrarily to force upon parties contractual obligations, terms or conditions

which they have not voluntarily assumed. In this regard, equity respects and upholds the fundamental right of the individual to complete freedom to contract or decline to do so, as he conceives to be for his best interests, so long as his contract is not illegal or against public policy. In this respect, and many others, equity follows the law." McCall v. Carlson, 63 Nev. 390, 172 P.2d 171, 187–188.

It is the rule in equity that a valid contract must be given full force and effect even though the contract is unwise or improvident or its enforcement is harsh. Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982; Cox v. Freeman, 204 Okl. 138, 227 P.2d 670, 28 A.L.R.2d 1230.

The opinion of the Court of Appeals is ordered vacated and the judgment of the superior court reversed with directions to reinstate the complaint.

BERNSTEIN, V. C. J., and UDALL, LOCKWOOD and McFARLAND, JJ., concur.