# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PATRICK E. MEYERS et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 9878-VCL |
| | ) | |
| QUIZ-DIA LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| QUIZ-DIA LLC et al., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCKFORD MANAGER LLC et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 7, 2017
Date Decided: June 6, 2017

John T. Dorsey, Richard J. Thomas, Emily V. Burton, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Bruce S. Bennett, Christopher Lovrien, Nathaniel P. Garrett, Sarah G. Conway, JONES DAY, Los Angeles, California; *Counsel for Plaintiffs*.

Brock E. Czeschin, Blake Rohrbacher, Susan M. Hannigan, Elizabeth A. DeFelice, Brian F. Morris, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Counsel for Defendants and Third-Party Plaintiffs*.

**LASTER, V.C.**

In their operating agreements, defendants Quiz-DIA LLC, Quizmark LLC, and QCE Gift Card LLC (collectively, the "Subs") granted their officers a right to mandatory indemnification. Plaintiffs Greg MacDonald and Dennis Smythe claim that they are entitled to indemnification from each of the Subs for losses they incurred in connection with a lawsuit filed in Colorado (the "Colorado Action"). At this point, the Colorado Action has been dismissed, and the order dismissing the case has become final.

MacDonald and Smythe successfully defended the Colorado Action. They are therefore entitled to indemnification from Quizmark and QCE Gift Card for losses they incurred in connection with the Colorado Action, which they suffered by reason of their status of former officers of the Subs. The covered losses encompass the expenses that MacDonald and Smythe incurred first investigating and later defending against the claims that were asserted against them in the Colorado Action. Summary judgment on these issues is entered in favor of MacDonald and Smythe and against Quizmark and QCE Gift Card.

MacDonald and Smythe are not entitled to indemnification from Quiz-DIA. The right to mandatory indemnification in Quiz-DIA's operating agreement only extended to members and officers of that entity. MacDonald and Smythe were neither. Summary judgment on this issue is entered in favor of Quiz-DIA and against MacDonald and Smythe.

## I.    FACTUAL BACKGROUND

The issues addressed in this decision were presented on cross motions for summary judgment. The parties have not identified any material disputes of fact, so the cross motions

are deemed "the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[1]

## A.    The Parties

At the time of the events giving rise to this decision, QCE LLC ("OpCo") was the primary operating entity for the Quiznos sandwich shop empire. The Subs were direct and indirect subsidiaries of OpCo. Quiz-DIA and Quizmark were Delaware limited liability companies. QCE Gift Card was an Arizona limited liability company.

MacDonald was the Chief Executive Officer of OpCo. Smythe was the Chief Financial Officer of OpCo. MacDonald and Smythe claim that they were also officers of all of the other entities in the Quiznos enterprise, including the Subs.

Each of the Subs had an operating agreement that granted its officers a right to mandatory indemnification. Framed in identical terms, the provisions stated as follows:

> To the full extent permitted by applicable law, a Member or Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Member or Officer by reason of any act or omission performed or omitted by such Member or Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Member or Officer by this Agreement, except that no Member or Officer shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Member or Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section . . . shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.[2]

---

[1] Ct. Ch. R. 56(h).

[2] Ex. 7, § 17 (Quiz-DIA); Ex. 8, § 17 (Quizmark); Ex. 9, § 16 (QCE Gift Card). Both sides submitted numerous exhibits in support of their cross motions. Exhibits

2

Because the three agreements are identical, this decision refers to the provisions singularly as the "Indemnification Provision."[3]

**B.     The Threatened Claims**

In 2006, Quiznos engaged in a leveraged recapitalization. To fund the transaction, OpCo borrowed a total of $875 million. OpCo subsequently suffered financial reversals.

By 2012, various funds affiliated with Avenue Capital Management II, L.P. and Fortress Investment Group LLC (the "Funds") had accumulated a substantial position in OpCo's debt. Their holdings gave them the power to declare a default under OpCo's loan agreements and pursue remedies as creditors. To neutralize that threat, Quiznos entered into a complex out-of-court restructuring with its creditors (the "Restructuring"). In practical terms, the Restructuring transferred ultimate ownership of Quiznos and its subsidiaries, including the Subs, to the Funds.

MacDonald and Smythe left Quiznos in July 2012. In summer 2013, the Funds asked MacDonald and Smythe to attend meetings with Fund representatives in New York City and Denver. Suspecting that the Funds were contemplating litigation, MacDonald and Smythe retained Jones Day to investigate potential claims that the Funds might pursue. At

designated by letter (*e.g.*, Ex. Q) are attached to the Transmittal Affidavit of Richard J. Thomas. Exhibits designated by number (*e.g.*, Ex. 9) are attached the Transmittal Affidavit of Blake Rohrbacher.

[3] After disputes arose between the parties, the defendants amended the Subs' operating agreements. The defendants no longer argue that the new provisions govern MacDonald and Smythe's rights to indemnification.

the meetings, the Funds interrogated MacDonald and Smythe about the Restructuring, and they expressed frustration with the Restructuring and Quiznos' post-transaction performance.

On March 14, 2014, OpCo and many of its affiliates—but not the Subs—filed for bankruptcy. Their filings disclosed that "[t]he Reorganized Debtors [and the Funds] w[ould] enter into [a] Specified Litigation Agreement" to pursue "Specified Litigation Claims" against various individuals, including MacDonald and Smythe.[4] The plan of reorganization defined the term "Specified Litigation Claims" as encompassing "all claims and causes of action made, or which could be made, on behalf of the Debtors [or the Funds] against" the named individuals. An exhibit to the plan stated that the Funds intended to pursue "any claims and rights they or their affiliates may have against former management and former owners of the Company relating to the [Restructuring] and any forecasts, projections, models, representations, or warranties made or provided in connection therewith . . . ."[5]

On July 1, 2014, Jones Day demanded indemnification and advancement on behalf of MacDonald and Smythe for "all expenses incurred in connection with the threatened claims."[6] The letter asked the Subs to "respond within 10 days of th[e] letter indicating

---

[4] Ex. O, at 8 of 265.

[5] *Id.* at 91, 207.

[6] Ex. 22.

4

whether [they] agree[d] to indemnify [MacDonald and Smythe] and advance costs."[7] On July 10, just before the ten-day period expired, the plaintiffs filed this lawsuit. In their original complaint, MacDonald and Smythe sought indemnification and advancement under a range of agreements, but not the Subs' operating agreements.

## C. The Colorado Action

Less than two weeks later, on July 22, 2014, the Funds filed the Colorado Action. The complaint alleged that MacDonald and Smythe induced the Funds to participate in the Restructuring by creating financial projections that "made it appear that the debt burden and capital structure that would remain in place post-[Restructuring] would be sustainable and appropriate."[8] It also alleged that the projections that MacDonald and Smythe provided were false or misleading. The Funds asserted claims for violations of the federal securities laws and common law fraud.

On September 17, 2015, the United States District Court for the District of Colorado (the "District Court") dismissed the Colorado Action, holding that federal jurisdiction did not exist because the claims did not fall within the scope of the Securities Exchange Act of 1934. The Funds appealed the ruling to the United States Court of Appeals for the Tenth Circuit (the "Court of Appeals").

---

[7] *Id.*

[8] Ex. 45, ¶ 65.

**D.    The Cross Motions**

On September 9, 2015, the plaintiffs amended their complaint to include claims for indemnification and advancement under the Subs' operating agreements. On June 22, 2016, the Subs moved for summary judgment. MacDonald and Smythe cross-moved for summary judgment.

On November 30, 2016, this court dismissed the claims for indemnification as premature (the "Delaware Dismissal Order").[9] The order explained that because the Court of Appeals had not yet ruled, the disposition of the claims in the Colorado Action was not yet final for purposes of indemnification under Delaware law.

Less than two weeks later, on December 13, 2016, the Court of Appeals affirmed the District Court's dismissal of the Colorado Action. On December 14, MacDonald and Smythe moved to vacate the Delaware Dismissal Order. By order dated January 10, 2017, the court denied their motion as premature because the Funds could still petition the United States Supreme Court for a writ of certiorari.[10] The order also described a path forward for the litigation:

> If the Funds petition for certiorari and the United States Supreme Court grants it, then this court will rule on [MacDonald and Smythe's] entitlement to advancement. If the writ is not sought or if the petition is denied, then this court could rule on [MacDonald and Smythe's] entitlement to

---

[9] Dkt. 200.

[10] *See* Dkt. 209.

6

indemnification, assuming [MacDonald and Smythe] still want the court to do so in the context of this action and on the current record.[11]

On March 13, 2017, the deadline to petition for a writ of certiorari passed. The Funds did not file a petition. Instead, they filed a new lawsuit in Colorado state court that advanced substantially similar allegations against MacDonald and Smythe.[12] With the passing of the deadline, the dismissal of the Colorado Action became final for purposes of indemnification under Delaware law, and MacDonald and Smythe's claims for indemnification became ripe.

## II. LEGAL ANALYSIS

Summary judgment may be granted when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[13]

### A. The Need For A New Action

As a threshold procedural objection, the Subs argue that MacDonald and Smythe can no longer seek indemnification in this action because this court dismissed their claims without prejudice. They assert that MacDonald and Smythe must file a separate action asserting a claim for indemnification and that the parties must brief the matter anew. That

---

[11] *Id.* at 5.

[12] *See Avenue Capital Mgmt. II, L.P. v. Schaden*, No. 2017-CV-30165 (Colo. Dist. Ct.).

[13] Ct. Ch. R. 56(c).

7

would be a waste of judicial and litigant resources. To dispose of this issue, this decision grants relief from the Delaware Dismissal Order.

"On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" for any "reason justifying relief from the operation of the judgment."[14] "The decision to vacate a dismissal and reopen a judgment is left to the discretion of the trial court."[15] In exercising its discretion, the court "construe[s] and administer[s] [the Rules] to secure the just, speedy and inexpensive determination of every proceeding."[16]

Vacating the Delaware Dismissal Order is just under the circumstances. The parties have fully briefed the scope of the Subs' indemnification obligation. The Subs have not identified any prejudice that would ensue if the court ruled on the issues now. When the court issued the Delaware Dismissal Order, the court recognized the possibility of issuing a future ruling on MacDonald and Smythe's rights to indemnification in this action, once the issue became ripe.[17] In a letter to the court dated March 15, 2017, MacDonald and Smythe asked to proceed on the existing record.[18] The Subs did not object. Nor did they object after the court requested supplemental briefing to bring the matter current.

---

[14] Ct. Ch. R. 60(b).

[15] *Neal v. Neal*, 2005 WL 3986089, at *1 (Del. Dec. 19, 2005) (TABLE).

[16] Ct. Ch. R. 1.

[17] Dkt. 209, at 5.

[18] *See* Dkt. 212.

8

"Given these realities, it is not clear what substantive purpose is served by [the Subs'] argument, other than to proliferate complaints and increase court costs. . . . In this particular case, it would disserve judicial and litigative efficiency to require separate complaints."[19] The Delaware Dismissal Order is therefore vacated so that the court can rule on the cross motions for summary judgment that the parties have briefed and presented.

## B.    Governing Principles Of Contract Interpretation

Quiz-DIA and Quizmark are Delaware limited liability companies, and their operating agreements are governed by Delaware law. The Delaware Limited Liability Company Act authorizes limited liability companies to provide indemnification subject only to the "standards and restrictions" imposed by the company's operating agreement.[20] The scope of a party's right to indemnification under an operating agreement is therefore governed by contractual principles.[21]

When interpreting a contract governed by Delaware law, "the role of a court is to effectuate the parties' intent."[22] "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning."[23] "If a writing is plain and clear

---

[19] *Nagy v. Bistricer*, 770 A.2d 43, 57-58 (Del. Ch. 2000) (Strine, V.C.).

[20] 6 *Del. C.* § 18-108.

[21] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1010 (Del. Ch. 2007); *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co., LLC*, 853 A.2d 124, 127 (Del. Ch. 2004).

[22] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

[23] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent."[24]

QCE Gift Card is an Arizona limited liability company, and its operating agreement is governed by Arizona law. Like the Delaware act, the Arizona Limited Liability Company Act authorizes limited liability companies to "[m]ake contracts, including contracts of guaranty, suretyship and indemnification . . . [and] [i]ndemnify a member, manager, employee, officer or agent or any other person."[25] An Arizona limited liability company's indemnification scheme may include "any provision that is not contrary to law[.]"[26]"Arizona's principles of contract interpretation parallel Delaware's.[27]

---

[24] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

[25] Ariz. Rev. Stat. Ann. § 29-610 (2016) (West).

[26] *Id.* § 29-682.

[27] *See Hadley v. Sw. Prop., Inc.*, 570 P.2d 190, 193 (Ariz. 1977) ("The interpretation of a contract is [a] question of law for the court."); *Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966) ("The intent of the parties, as ascertained by the language used, must control the interpretation of a contract."); *Jokake Const. Co. v. Elward Const. Co.*, 2010 WL 334992, at *3 (Ariz. Ct. App. Jan. 28, 2010) ("The parties' intent is best ascertained by the language in the contract itself."); *Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) ("A clear and unambiguous contract must be interpreted according to its terms."); *In re Estate of Lamparella*, 109 P.3d 959, 963 (Ariz. Ct. App. 2005) ("A contract is not ambiguous just because the parties to it . . . disagree about its meaning. . . . Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." (citations omitted)); *Broadband Dynamics, L.L.C. v. Global Credit Network, L.L.C.*, 2012 WL 6602392, at *2 (Ariz. Ct. App. Dec. 18, 2012) (holding that courts must "construe contracts as a whole and look to the entire instrument for the intention of the parties in order to give effect to every word in the agreement." (citations omitted)).

## C.     Officer Status

The Indemnification Provision grants indemnification to "Members and Officers." MacDonald and Smythe were not members of any of the Subs, so they only can obtain indemnification if they were officers. Quizmark and QCE Gift Card concede the point. Quiz-DIA does not. The undisputed evidence establishes as a matter of law that MacDonald and Smythe were not officers of Quiz-DIA.

Quiz-DIA's operating agreement provides as follows:

[T]he Officers of the Company shall be designated by the Member. Officers of the Company may consist of at least a President, a Secretary and a Chief Financial Officer. . . . The Member may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Member.[28]

Quiz-DIA's sole member was its direct parent, The Quizno's Master LLC ("MasterCo").[29]

The record demonstrates that MasterCo never designated MacDonald or Smythe as officers of Quiz-DIA. The record contains written consents appointing MacDonald as President and CEO and Smythe as CFO of thirteen different limited liability companies in the Quiznos enterprise. Those thirteen companies included QCE Gift Card and Quizmark. They did not include Quiz-DIA. The record also contains five additional consents in which MasterCo appointed officers of Quiz-DIA. None of them appointed MacDonald or Smythe.

---

[28] Ex. 7 § 15(a).

[29] *See* Ex. 1; Ex. 7.

11

MacDonald and Smythe contend that they nevertheless served as *de facto* officers of Quiz-DIA because they performed "the same functions [for that company] as [they] did for every other entity."[30] That does not follow. To the contrary, serving as an officer of Quiz-DIA entailed meeting additional requirements that MacDonald and Smythe never satisfied. Unlike QCE Gift Card or Quizmark, Quiz-DIA held a Colorado liquor license so that it could sell alcoholic beverages at its locations in the Denver International Airport. Quiz-DIA could not obtain the liquor license unless its officers underwent background checks. MacDonald and Smythe never underwent background checks.

MacDonald and Smythe were not officers of Quiz-DIA. They consequently have no right to indemnification from that entity. Summary judgment is entered in favor of Quiz-DIA on MacDonald and Smythe's claim for indemnification. The remainder of this decision focuses only on Quizmark and QCE Gift Card.

**D.     Coverage For The Colorado Action**

MacDonald and Smythe only can obtain indemnification for the Colorado Action if it fell within the scope of the Indemnification Provision. It clearly did.

The Indemnification Provision granted indemnification for "any loss, damage or claim incurred . . . by reason of any act or omission performed or omitted by such Member or Officer in good faith on behalf of the Company." In the corporate context, an action meets the "by reason of" standard "if there is a nexus or causal connection between any of

---

[30] Smythe Dep. 90-91; *accord* MacDonald Dep. 58.

12

the underlying proceedings . . . and one's official corporate capacity, . . . regard[less] [of] one's motivation for engaging in that conduct."[31]

The Colorado Action attacked MacDonald and Smythe's involvement in negotiating the Restructuring and preparing the financial statements and projections that provided the basis for the Restructuring. The Restructuring was intended to save the entire Quiznos family of companies from financial failure. The actions that MacDonald and Smythe took when negotiating the Restructuring and preparing the financial statements and projections for it were therefore taken on behalf of the entire Quiznos family of companies, including Quizmark and QCE Gift Card.

Given this fact, MacDonald and Smythe acted "by reason of" their status as CEO and CFO of Quizmark and QCE Gift Card. Any losses that they suffered in the Colorado Action were incurred by reason of acts they performed on behalf of the Quiznos family of companies, including Quizmark and QCE Gift Card. The Indemnification Provision therefore covers expenses that MacDonald and Smythe incurred in the Colorado Action.

E.      Pre-Litigation Expenses

MacDonald and Smythe seek to recover not only expenses that they incurred defending the Colorado Action, but also expenses they incurred preparing to defend the claims that they feared the Funds would file. The pre-litigation expenses are covered.

---

[31] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

13

As noted, the Indemnification Provision granted indemnification for "any loss, damage or claim incurred . . . by reason of any act or omission performed or omitted by such Member or Officer in good faith on behalf of the Company." In this case, MacDonald and Smythe incurred the costs to hire Jones Day and investigate the claims that the Funds might bring "by reason of" their actions on behalf of the Quiznos family of companies, including Quizmark and QCE Gift Card. Those costs were losses within the plain language of the Indemnification Provision.

In the indemnification context, the concept of losses generally includes not only fines or judgments, but also the costs of investigation and defense.[32] Given this settled understanding, it was incumbent upon Quiznos to limit the scope of the Indemnification Provision if it sought to exclude losses resulting from the costs of investigating claims and

---

[32] *See Homestore*, 888 A.2d at 211 ("Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service."); *White v. Curo Tex. Hldgs., LLC*, 2016 WL 6091692, at *26 (Del. Ch. Sept. 9, 2016) (holding that covered expenses included costs of investigation); *Scharf v. Edgcomb Corp.*, 1997 WL 762656, at *1 (holding that indemnitee stated claim to recover expenses incurred during investigation). *Cf.* 8 *Del. C.* § 145(a) (authorizing indemnification for an "investigative" proceeding); *id.* § 145(b) (same); *id.* § 145(c) (providing for mandatory indemnification when a covered person has been "successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section"); Edward P. Welch et al., 1 *Folk on the Delaware General Corporation Law* § 145.02, at 4-394 (6th ed. 2017) ("[I]n the first edition of this treatise, Professor Folk stated that even where a director neither was served with process nor voluntarily appeared in a stockholder's derivative action, the director's concern for his 'business reputation' was sufficient reason to incur expenses and obtain indemnity." (citations omitted)).

preparing a defense. Nothing in the Indemnification Provision purports to prevent a party from obtaining indemnification for the costs of conducting a pre-litigation investigation.

Quizmark and QCE Gift Card argue that MacDonald and Smythe should not be entitled to recover the costs of investigating potential claims against them because they "were not engaged in the 'defense' of the Colorado [Action] until it was actually filed."[33] For starters, the Indemnification Provision is not limited to costs of defense. But even if it were, "[i]n a litigation context the term 'defense' has a broad meaning [unless the entities] . . . show[] that the parties intended to accord it a restrictive definition in their relationship."[34] MacDonald and Smythe learned about the Funds' potential claims against them in summer 2013, when the Funds summoned them to meetings and conveyed their frustration about the Restructuring. In March 2014, the Funds stated in the Quiznos bankruptcy filings that they intended to pursue claims against MacDonald and Smythe. It was reasonable for MacDonald and Smythe to believe that the Funds were threatening a lawsuit and that it was necessary to investigate the claims that the Funds might bring as part of their defense.

Under the plain language of the Indemnification Provision, MacDonald and Smythe are entitled to indemnification for the expenses they incurred investigating claims that the Funds might bring against them. Those amounts were losses they suffered by reason of

---

[33] Dkt. 182, at 46.

[34] *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992).

actions taken on behalf of the Quiznos family of companies, including Quizmark and QCE Gift Card.

**F.    Good Faith**

Quizmark and QCE Gift Card point out that the Indemnification Provision only applies if the officers act "in good faith on behalf of the Company." They contend that to obtain indemnification, MacDonald and Smythe must prove that they acted in good faith in connection with the events underlying the Colorado Action, even though the Colorado Action has been dismissed. That position is contrary to law.

The Indemnification Provision granted mandatory indemnification "[t]o the full extent permitted by applicable law." In Delaware, "a promise to indemnify 'to the fullest extent permitted by law[]' [is] an expression of the intent for the promise of indemnity to reach as far as public policy will allow."[35] In the corporate context, such a promise includes a commitment to provide mandatory indemnification of any "expenses . . . actually and reasonably incurred by" any "present or former director or officer of a corporation [who] has been successful on the merits or otherwise in defense of any action, suit or proceeding . . . ."[36] "The phrase found in Section 145(c)—'on the merits or otherwise'—permits the indemnitee to be indemnified as a matter of right . . . [even] if he or she successfully asserts

---

[35] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *10 (Del. Ch. Jan.. 23, 2006) (Strine, V.C.).

[36] 8 *Del. C.* § 145(c).

a 'technical' defense, such as a defense based upon a statute of limitations."[37] "Success" includes the dismissal without prejudice of a federal action, even if the same claims are re-alleged in state court at a later date.[38]

"The good faith requirement does not apply to a director or officer who is 'successful' under Section 145(c)."[39] When Chief Justice Strine was a member of this court, he explained in the *Stockman* decision that when an alternative entity's operating agreement grants mandatory indemnification to "the fullest extent permitted by law," the grant includes a right to mandatory indemnification when an individual has been successful "on the merits or otherwise," without having to show good faith.[40]

---

[37] 1 R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corporations & Business Organizations* § 4.12[B], at 4-64 (2014) [hereinafter, Balotti & Finkelstein].

[38] *Zaman v. Amadeo Hldgs., Inc.*, 2008 WL 2168397, at *21-23 (Del. Ch. May 23, 2008) (Strine, V.C.).

[39] Balotti & Finkelstein § 4.12[B], at 4-64 n.388; *accord Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *3 (Del. Ch. May 3, 2002) ("If the former officer is 'successful on the merits or otherwise' in a proceeding described in Section 145(a), then he is entitled to indemnification regardless of whether or not he acted in good faith or in what he perceived to be the best interests of the corporation."); *Cochran v. Stifel Fin. Corp.*, 2000 WL 286722, at *18 (Del. Ch. Mar. 8, 2000) (Strine, V.C.) ("Delaware permits – nay, mandates – indemnification of directors and officers who satisfy the success criteria in § 145(c) regardless of their good faith . . . ."), *aff'd in part, rev'd in part on other grounds*, 809 A.2d 555 (Del. 2002); *Green v. Westcap Corp. of Del.*, 492 A.2d 260, 265 (Del. Super. 1985) (reviewing DGCL drafting history and concluding that "the only portion of subsection (a) and (b) [of Section 145] which is incorporated by reference is the portion which defines the type of action, suit or proceeding covered by each section and that that reference does not incorporate the subsequent qualification required for indemnification.").

[40] *Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *13-18 (Del. Ch. July 14, 2009) (Strine, V.C.).

Quizmark and QCE Gift Card argue that Chief Justice Strine's analysis in *Stockman* was dictum. Perhaps, but it is nonetheless persuasive.[41] Quizmark and QCE Gift Card also contend that *Stockman* does not state a governing rule of law, because "additional discovery—in some instances mimicking the very litigation avoided by the [resolution of the underlying proceeding]—may be required to permit a determination on whether the indemnitee acted in good faith."[42] In the decision on which they rely, the party seeking indemnification had not been successful on the merits or otherwise. The decision recognized that if "the indemnitee has succeeded 'on the merits or otherwise,' . . . further inquiry into the 'how' and 'why' of the result is unnecessary."[43]

---

[41] *See Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002); *Bata v. Bata*, 163 A.2d 493, 510 (Del. 1960).

[42] *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1113 (Del. Ch. 2012).

[43] *Id.* at 1107 (citations omitted). There is one case that arguably runs counter to *Stockman*, but neither side cited it. *See Branin v. Stein Roe Inv. Counsel, LLC*, 2014 WL 2961084 (Del. Ch. June 30, 2014). The covered person in *Branin* was originally protected by a provision that closely resembled the Indemnification Provision. After litigation arose, the entity amended the provision. The principal disputes were which indemnification provision governed and whether the plaintiff had been sued in a covered capacity. The court ruled in the plaintiff's favor on both issues, but refused to hold as a matter of law that the plaintiff was entitled to indemnification, stating that there was "a disputed issue of fact" concerning whether the covered party "acted in good faith and in a manner he reasonably believed to be within the scope of his authority." *Id.* at *10. The continuing role of good faith in the analysis after a party has been successful on the merits or otherwise does not appear to have been a focal point of the opinion, and the parties do not appear to have brought *Stockman* to the court's attention. Because no one in this case cited *Branin*, and because *Branin* did not consider the implications of *Stockman*, this opinion does not consider *Branin* further.

18

The Indemnification Provision granted mandatory indemnification "[t]o the full extent permitted by applicable law."[44] It drew on corporate concepts by covering losses suffered "by reason of" a persona's status as an officer.[45] It therefore encompassed a commitment to provide mandatory indemnification, without a requirement that the officer first prove good faith, when the officer has been successful on the merits or otherwise.

The District Court dismissed the Colorado Action for lack of jurisdiction. The Court of Appeals affirmed. The Funds did not pursue the matter further. Once the deadline for filing a petition for certiorari passed, the dismissal of the Colorado Action became final. At that point, MacDonald and Smythe were "successful on the merits or otherwise" and entitled to mandatory indemnification without any need to prove good faith.

The foregoing analysis applies plainly to Quizmark, because it is a Delaware entity. A wrinkle arises for QCE Gift Card, because it is an Arizona entity, and Arizona law governs whether a grant of mandatory indemnification to the fullest extent of the law encompasses a right to indemnification without a need to prove good faith following success in the underlying litigation. The parties did not brief this issue. When neither party argues for a different result under the law of a different state, this court is entitled to apply

---

[44] *Compare id.* at *3 ("To the fullest extent permitted by law, the Partnership agrees to indemnify . . .").

[45] *Compare* 8 *Del. C.* §§ 145(a) & (b); *see Hyatt v. Al Jazeera Am. Hldgs. II, LLC*, 2016 WL 1301743, at *7 (Del. Ch. Mar. 31, 2016) (noting that a "by reason of" standard "tracks the language of Section 145 of the DGCL").

19

Delaware law.[46] MacDonald and Smythe are therefore entitled to indemnification from both Quizmark and QCE Gift Card.

## G. The Amount Of The Indemnification

This decision does not address the specific amount of indemnification to which MacDonald and Smythe are entitled. If the parties cannot agree on an amount, then MacDonald and Smythe shall make an application pursuant to Court of Chancery Rule 88.

## III. CONCLUSION

Judgment is entered in favor of MacDonald and Smythe and against Quizmark and QCE Gift Card on the question of whether MacDonald and Smythe are entitled to mandatory indemnification from Quizmark and QCE Gift Card for the amounts they incurred preparing for and defending the Colorado Action.

Judgment is entered in favor of Quiz-DIA and against MacDonald and Smythe on the question of whether MacDonald and Smythe are entitled to mandatory indemnification from Quiz-DIA.

---

[46] *See Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 765 (Del. Ch. 2014); *Republic of Panama v. Am. Tobacco Co.*, 2006 WL 1933740, at \*5 (Del. Super. June 23, 2006).